## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MONICA BANKS** | **CIVIL ACTION** |
| **VERSUS** | |
| | **NO. 16-769-BAJ-RLB** |
| **CAROLYN W. COLVIN,** | |
| **ACTING COMMISSIONER OF** | |
| **SOCIAL SECURITY** | |

### NOTICE

Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court for the Middle District of Louisiana.

Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the proposed findings of fact and conclusions of law in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on February 26, 2018.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MONICA BANKS** | **CIVIL ACTION** |
| **VERSUS** | |
| | **NO. 16-769-BAJ-RLB** |
| **CAROLYN W. COLVIN,**<br>**ACTING COMMISSIONER OF**<br>**SOCIAL SECURITY** | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Monica Banks ("Plaintiff") seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for Disability Insurance Benefits under the Social Security Act. (R. Doc. 1). Having found all of the procedural prerequisites met (Tr. 1-3), the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you… file an action in Federal district court…"). For the reasons given below, the Court **RECOMMENDS** that the decision of the Commissioner be **REVERSED** and this matter be **REMANDED** for further proceedings consistent with this Ruling.

**I.    PROCEDURAL HISTORY**

Plaintiff filed an application for disability insurance benefits and supplemental security income on November 18, 2013. Plaintiff's claim was eventually denied by an Administrative Law Judge ("ALJ"), who first held an administrative hearing (Tr. 26-62) before issuing an unfavorable decision on June 11, 2015. (Tr. 5-22). Plaintiff's request for review of the ALJ's

decision was denied by the Appeals Council on September 22, 2016. (Tr. 1-3). The ALJ's decision rested as the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981.

## II.     STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The Court may not reweigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g., Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("In applying the substantial evidence standard, we must carefully scrutinize the

record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's."); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If, on the other hand, the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

### III.    ALJ'S DETERMINATION

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove she is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities…" 20 C.F.R. § 404.1520(c). At step three, the ALJ must conclude the claimant is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving she is incapable of meeting the physical and mental demands of her past relevant work. 20 C.F.R. § 404.1520(f).

3

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education, and past work experience, that he or she is capable of performing other work.  20 C.F.R § 404.1520(g)(1).  If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ made the following determinations:

1. Plaintiff had met the insured status requirements of the Social Security Act through December 31, 2018.

2. Plaintiff had not engaged in substantial gainful activity since December 1, 2014.[1]

3. Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine, morbid obesity, diabetes mellitus, peripheral neuropathy, hypertension, asthma, migraines, hiatal hernia, and depression.

4. Plaintiff did not meet or medically equal any listed impairment.

5. Plaintiff retained the residual functional capacity (RFC) to perform sedentary work, except only occasionally climb ramps, stairs, ladders and scaffold; frequently balance; occasionally stoop, kneel, crouch, and crawl; avoid concentrated exposure to fumes, odors, dust, poor ventilation, and pulmonary irritants, can understand, remember, and perform simple and familiar detailed tasks, and uses a walker to ambulate.

6. Plaintiff is able to perform past relevant work as a medical receptionist.

7. Plaintiff is not disabled.

(Tr. 10-17).

## IV.   DISCUSSION

Plaintiff makes the following arguments: (1) the ALJ committed error in finding Plaintiff did not meet Listing 1.04; (2) the ALJ committed error in finding Plaintiff able to return to her

---

[1] Plaintiff amended her alleged onset date from January 1, 2013 to December 1, 2014 at the Administrative Hearing. (Tr. 30).

4

past relevant work as actually performed by Plaintiff; and (3) the Plaintiff's use of a walker precluded a finding that Plaintiff could return to her past relevant work as generally performed in the national economy.

### A.     Listing 1.04

At step 3, the ALJ found "that claimant's impairments do nor[sic] singularly or in combination meet or medically equal the required criteria for Listing 1.04, 3.03, 4.04, 900, 11.14 or any other listed impairment. The signs, symptoms and history of treatment presented in the evidence of record are inconsistent with any impairment(s) of listing-level of severity." (Tr. 11). That being the extent of the analysis with regard to Listing 1.04, the remainder of the step 3 section of the ALJ's decision is dedicated to addressing Listing 12.04.

Plaintiff suggests that she meets Listing 1.04 because she cannot ambulate effectively, has been diagnosed with degenerative disc disease with stenosis and foraminal narrowing, has had positive straight leg raise tests, and suffers from pain in her legs and spine. (R. Doc. 8 at 11). Plaintiff further argues that the ALJ erred in failing to develop the record as it pertains to Listing 1.04. (R. Doc. 8 at 12). The Commissioner responds that Plaintiff failed to meet her burden of establishing that her impairment met all of the criteria to equal Listing 1.04, or that a non-listed impairment or combination thereof equaled Listing 1.04. (R. Doc. 12 at 8-9). Specifically, the Commissioner argues that the record contains evidence of a disc herniation and spinal stenosis, but does not contain evidence of the additional Paragraph A or Paragraph C requirements. (R. Doc. 12 at 10).

At step three, the ALJ considers the severity of the claimant's impairments without regard to vocational factors.  The ALJ applies the Social Security Administration's Listing of Impairments, which "describes for each of the major body systems impairments that [the SSA]

5

consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). A claimant whose impairment (or combination of impairments) meets or equals the criteria of a Listing is disabled and entitled to benefits. For that reason, the criteria in the Listings are "demanding and stringent." *Falco*, 27 F.3d at 162. "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). An impairment that exhibits only some of the criteria, no matter how severely, does not qualify. *Sullivan*, 493 U.S. at 529-32.

The ALJ should identify the listed impairment for which the claimant's symptoms fail to qualify and provide an explanation as to how he or she determined that the symptoms are insufficiently severe to meet any listed impairment. A bare and summary conclusion that a plaintiff does not meet the criteria of any Listing is beyond meaningful judicial review. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Even if a court determines that the ALJ failed to state the reasoning for an adverse determination at step three, a reviewing court must still evaluate whether the error was harmless. *Audler*, 501 F.3d at 448.

Listing 1.04A and C, the two subsections cited by Plaintiff, apply to disorders of the spine and are described as follows:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> \*\*\*

6

> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04A and C.

The ALJ's decision is absent of any substantive discussion regarding the objective medical evidence as it pertains to Listing 1.04, only stating vaguely that Plaintiff's impairments did not meet Listing 1.04 because the "signs, symptoms and history of treatment presented in the evidence of record are inconsistent with any impairment(s) of listing-level of severity." (Tr. 11). The ALJ fails to point to any objective medical evidence in the record to support her finding and her conclusory determination regarding Listing 1.04 was erroneous. *See Audler*, 501 F.3d at 448.

Having concluded that the ALJ committed error at step 3, the Court must then determine whether that error was harmless. *See Audler*, 501 F.3d at 448 (citing *Morris v. Bowen*, 864 F.3d 333, 334 (5th Cir. 1988) ("Having determined that the ALJ erred in failing to state any reason for her adverse determination at step 3, we must still determine whether this error was harmless.").

Plaintiff asserts that she meets Listing 1.04 because she cannot ambulate effectively, suffers from severe lumbar degenerative disc disease with stenosis and foraminal narrowing, had positive straight leg raise tests, and suffers from pain in her legs and spine. (R. Doc. 8 at 11). Plaintiff further suggests that, should there have been any doubt regarding whether she met Listing 1.04, the ALJ should have sought an opinion from a medical expert.

There is evidence in the record of Plaintiff's lower back problems. Based on the medical records in evidence, Plaintiff began complaining of lower back pain in January of 2014. (Tr. 313). The record contains other instances of subjective complaints of pain. Plaintiff's subjective complaints, however, are not competent medical evidence of listing-level severity. *See* 20 C.F.R.

7

pt. 404, subpt. P, app'x 1 § 1.00D (The "[p]hysical findings" cited in support of listing-level severity "must be determined on the basis of objective observation during the [doctor's] examination and not simply a report of the individual's allegation; e.g., 'He says his leg is weak, numb.'").

Listing 1.04A requires a positive straight leg raising test in both the seated and supine position. In her Memorandum in Support of Appeal, Plaintiff points to a positive straight leg test (R. Doc. 8 at 11, citing Tr. 371) that occurred on or about February 23, 2015. That positive test, however, only refers to a <u>sitting</u> straight leg raise. Plaintiff cites to no other portion of the transcript supporting a finding that this requirement of Listing 1.04A is satisfied. The Court has likewise not discovered such support.[2]

Without any evidence of a positive straight leg raising test in the supine position, any failure by the ALJ to discuss the reasoning behind the Step 3 decision is harmless. *Miller v. Astrue*, 2012 WL 3255595, at *5 (M.D. La. June 25, 2012) (Plaintiff was not disabled at step 3, as "Listing 1.04 requires positive straight leg raise tests in both the sitting and supine positions, and the record is devoid of any evidence that the few positive straight leg raise tests conducted on plaintiff occurred in both the sitting and supine positions."); *see also Carrillo v. Astrue*, 2010 WL 2136438, at *6 (W.D. Tex. May 26, 2010) (substantial evidence support ALJ's finding that claimant did not meet Listing 1.04A where record did not show positive straight leg raising tests, both sitting and supine, "for any period of 12 continuous months").

Plaintiff also asserts that she meets Listing 1.04C because, in part, she suffers from pain in her legs and spine and is unable to ambulate effectively. (R. Doc. 8 at 11). In April of 2014, Plaintiff underwent an emergency CT scan of her lumbar spine during an emergency visit to

---

[2] At the January 2014 visit, the records indicate that Plaintiff's bilateral straight leg raising test was <u>negative</u>. Another examination on April 1, 2014 reveals a "negative straight leg raise." (Tr. 387).

8

Lane Regional Medical Center for back pain. (Tr. 386). That CT scan indicated no acute fracture, subluxation, bone erosion, or destruction, but did suggest "[t]hin bulging and facet arthropathy mildly narrows the spinal canal and neural foramina at L3-L4 and L4-L5." (Tr. 385). Plaintiff continued to complain of and be assessed for lower back pain throughout the rest of the timespan covered by the objective medical records.

Beginning in February of 2015, Plaintiff sought somewhat frequent treatment for lower back pain from medical providers. Plaintiff went to the Our Lady of the Lake emergency room on February 8, 2015 complaining of lower back pain, wherein she "was admitted for intractable back pain consistent with a lumbosacral radiculopathy secibdary [sic] to a disk bulge notable on CT of her lumbar spine." (Tr. 570). Diagnoses from that visit, however, indicate that "patient has no neurological loss or dysfunction that would be concerning for spinal cord compression." (Tr. 577).

Only a few days after her discharge from Our Lady of the Lake, Plaintiff reported to The NeuroMedical Center Clinic for lower back pain, including complaints of midline lower back pain, bilateral buttock pain, bilateral hip pain, bilateral posterior leg pain that stops in her feet, and weakness in both of her legs. (Tr. 374). She underwent an MRI on February 19, 2015 that showed mild spinal canal stenosis at L3-4 and moderate spinal canal narrowing and bilateral neuroforaminal narrowing at L4-5. (Tr. 373). Subsequent diagnosis pertaining to that MRI, however, indicated that "imaging does not support evidence of spinal cord compression due to mass effect." (Tr. 556). A lack of spinal cord compression would fail to satisfy the requirements of any section of Listing 1.04.

Plaintiff was again admitted to Our Lady of the Lake on March 8, 2015 for observation of pain. (Tr. 497). Those records suggest Plaintiff reported constant pain at a level of 10/10, located

9

in the lower back and radiating down both legs to her feet. (Tr. 497). The diagnosis, however, reveals that "Patient's physical exam findings do not correlate to history of intractable pain." (Tr. 556). Listing 1.04C requires chronic nonradicular pain and weakness. The medical records consistently describe the pain as radicular, not non-radicular (Tr. 386, 477, 497) and, as pointed out by the Commissioner, includes significant notations of "sciatica" (R. Doc. 12 at 10-11), an indication that the any subjective pain reported was radicular and radiating from the back into the buttock and along the lower limb. As such, the record does not a support a finding that Plaintiff meets Listing 1.04C and any error by the ALJ at step 3 is harmless.

### B. Past Relevant Work

In suggesting the ALJ committed factual and legal error in finding Plaintiff able to return to her past relevant work, Plaintiff argues that she cannot perform her past relevant work as actually performed because she performed that work at a higher exertional level than the RFC assessed by the ALJ. (R. Doc. 8 at 6).

Plaintiff suggests that her medical receptionist job "as actually performed" constitutes a higher exertional level based on a form she filled out wherein she describes the position as she performed it. In her Adult Function Report, Plaintiff describes her most recent employment as "Medical Assistant," and states that she was engaged in "customer service, computer entry date, Pt. [patient] registration, answered phones, appt. scheduling, insurance verification, got student from class." (Tr. 215). She further enters that this job entailed 8 total hours of walking, 8 total hours of standing, 8 total hours of sitting, 8 total hours of stooping, 8 total hours of kneeling, 8 total hours of crouching, 8 total hours of handling, 8 total hours of reaching, and 8 total hours of writing, typing, or handling small objects. (Tr. 215). She was also responsible for lifting supply boxes and charts. Plaintiff argues that, because of performing "up to 8 hours of standing and

10

walking in this job as it was actually performed" (R. Doc. 8 at 7), the ALJ's RFC of only occasional kneeling and crouching, and occasional standing or walking did not comport with the job as actually performed based on Plaintiff's report.

Other than the information provided by the Plaintiff, there is no other information that reliably describes the requirements of Plaintiff's prior employment as actually performed. The Commissioner recognizes that the "record does not contain reliable information regarding the specific physical demands of Plaintiff's medical receptionist job, as 'actually performed' . . . [t]hus the Commissioner concedes that it was error for the ALJ to find that Plaintiff could perform her past relevant work" as actually performed. (R. Doc. 12). The Court agrees and finds that substantial evidence does not support the ALJ's step 4 determination that the Plaintiff was capable of meeting the physical and mental demands of her past relevant work as she actually performed it.

Plaintiff also argues that she cannot return to her past relevant work as generally performed because of her use of a walker. (R. Doc. 8 at 6). Various records suggest Plaintiff uses a walker to ambulate, which is consistent with her testimony at the administrative hearing. During a March 2015 admission to Our Lady of the Lake for back pain, the use of a walker was recommended. (Tr. 499). Plaintiff testified that she uses the walker any time she walks. (Tr. 41). The ALJ acknowledges Plaintiff's use of a walker in his decision, incorporating it into his RFC. (Tr. 12).

Plaintiff's prior work as a medical receptionist is classified as sedentary work. Sedentary work is defined as work that:

> [i]nvolves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing

11

> is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

In addition to Plaintiff's limitation of the use of a walker, the RFC assigned to the Plaintiff further specifies that Plaintiff can "occasionally climb ramps, stairs, ladders and scaffold." (Tr. 12). The ALJ's opinion, however, contains no analysis or discussion as to how an individual can lift and carry items up to ten pounds while using a walker, or how such an individual can climb stairs, ladders and scaffolds, even occasionally. *See* SSR 96-9P, 1996 WL 374185 (July 2, 1996) (noting that the use of a medically required hand-held assistive device requires consideration of the particular facts of each case and that the occupational base for an individual who must use such a device for balance because of significant involvement of both extremities may be significantly eroded).

There is certainly evidence in the record supporting Plaintiff's inability to perform certain actions seemingly at conflict with the RFC determination. While it is not the Court's role to weigh the evidence or resolve conflicts, the ALJ's decision provides no analysis or discussion regarding the basis for its conclusion that Plaintiff can perform her prior work as generally performed.

SSR 96-9p further recognizes that it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work. Testimony from the vocational expert in this case, however, does not resolve this issue. The ALJ's hypothetical asks the VE to consider an individual that "could perform work at the light exertional level, can occasionally climb ramps, stairs, ladders, and scaffolds, and frequently balance, can occasionally stoop, kneel, crouch, and crawl. Should avoid concentrated exposure to fumes, odors, and dusts, poor ventilation, and pulmonary irritants. And is capable of

12

understanding, remembering, and performing simple, familiar detailed tasks." (Tr. 58). The VE responded that such a hypothetical individual could perform the job of medical receptionist. (Tr. 58). Even assuming that the VE's testimony is accurate, it is a faulty hypothetical as it presumes an individual that could perform work at the light exertional level. This is inconsistent with the RFC. The follow-up hypothetical does not remedy this error, but simply adds a requirement of the use of a walker to ambulate. Although the VE's response is that medical receptionist is a sedentary job and the "majority" of the job is performed at the sitting level, it is unclear as to whether the hypothetical ability to perform work at the light exertional level was a factor in the expert's analysis or testimony. The Court will not presume to know how or if the faulty hypothetical affected the VE's testimony.

The record is likewise void of any discussion or analysis by the VE or in the ALJ's decision about the exertional and non-exertional requirements necessary other than sitting and how Plaintiff's use of a walker would or would not erode the sedentary occupational base of Plaintiff's past relevant work as a medical receptionist. The Commissioner suggests in briefing that "Plaintiff describes no obstacle to using one of the widely available walker baskets to accommodate the occasional need to move these small items." (R. Doc. 12 at 8). Post hoc suggestions are not sufficient, however. The ALJ does not discuss if or how Plaintiff's use of a walker may further erode the sedentary occupational base and the basis for any conclusion on this issue. The Court's role is to determine whether substantial evidence supports the ALJ's decision, but where the ALJ does not discuss the basis of his decision, meaningful review is not available.

The ALJ's conclusion that the claimant is able to perform her prior work as it is generally performed is not supported by substantial evidence.

## V. Conclusion

For the reasons given above, the Court **RECOMMENDS** that the decision of the Commissioner be **REVERSED** and this matter be **REMANDED** for further proceedings consistent with this Ruling.

Signed in Baton Rouge, Louisiana, on February 26, 2018.

_____
**RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE**